This is case number 411-0764. The Police Benevolent and Protective Association Labor Committee v. City of Decatur. Show appearance of the appellant, Shane Voiles. Is that pronounced correctly, sir? Yes, it is. Okay, Mr. Voiles. Mr. Dykstra. Are you both going to be arguing? No, sir. Okay. And for the appellee, John Robinson? That's correct, sir. Okay, Mr. Voiles, you may proceed, sir. What brings us here today is an arbitration award that was entered pursuant to a collective bargaining agreement. After the arbitration was concluded, the union moved in circuit court to confirm the award. Very shortly thereafter, the city moved to vacate. The city's grounds, predominantly, primarily, the city's allegations in support of its motion to vacate was that the award was contrary to public policy. So this is what I would call a public policy case is. And there are definitely some paramount public policies implicated by the award. For example, a person is innocent until proven guilty. Also, allegations in and of themselves do not prove guilt. And crimes must be proved by more than a preponderance of the evidence. The reason this case exists is that although the arbitrator time and again stated that he was not convinced that Officer Welker committed a crime of domestic battery and made those specific findings repeatedly, he once stated, generally, that he was convinced by a preponderance that the charged conduct occurred. And it was that particular aspect of his decision, which is roughly 100 pages, that both the city and the trial court seized upon. When you talk about the burden of proof, when an arbitrator is deciding a fact question, such as in this case, that domestic violence occurred in that second instance, where is the requirement that preponderance of the evidence is not sufficient? It's not a requirement. It's part of the just cause standard, which is in the collective bargaining agreement, that if the city or the employer, generally, elected to proceed on allegations that the employee is guilty of a crime, it is generally accepted in labor arbitration and labor law that the employer must prove those allegations by more than a simple preponderance. It's not proof beyond a reasonable doubt, as would exist in court. Well, I'm not sure when you say it's generally accepted. Using a comparison, if this were a criminal case, and someone's been convicted of a crime, and the case comes up for sentencing hearing, at the sentencing hearing in front of the judge, the judge could entertain evidence, hear evidence about, let's say, assume your client had been convicted in a criminal case of whatever, the first domestic battery or some other crime. The judge could hear all the evidence pertaining to this domestic violence incident and decide whether or not it occurred, and impose a greater sentence than the judge might otherwise if the judge concluded that it occurred by a preponderance of the evidence. There's no requirement, even in the criminal context of sentencing, that it be proof any greater than that. Why should there be such a requirement in the context of an arbitration regarding behavior in a labor dispute? Well, I think you're asking me two separate questions. The issue in front of the arbitrator is whether or not the conduct occurred. Right. And he said that has to be proved by more than a preponderance. Is he right? Yes. And where does that come from? I suppose that's my question. Okay. His interpretation of the just cause standard, that particular aspect of his decision drew its essence from the just cause standard, which is part of the party's collective bargaining agreement, and that is well supported in the labor arbitration. You mean the arbitrator can't say, I think he did it, but the burden of proof wasn't sufficient to establish it? That's what we're talking about here? Preponderance would be he did it, but I'm just not sufficiently convinced. By clearly convincing is? I think that is exactly what the arbitrator did do. I think he said if this was a lower standard, if this was a preponderance standard, I might have been convinced. And he did look at the case through that lower preponderance standard. Actually, he recommended a 45-day suspension, didn't he? Correct. So he wasn't saying I'm not convinced. He was saying I'm convinced as far as a 45-day standard goes, but I'm not convinced as far as termination. That is correct. Which seems to be going two different ways at the same time. Yes, and that is exactly what the position the trial court took, but that is not what precedent instructs the courts to do. So the arbitrator can say not guilty but 45-day suspension? That's your position, isn't it? He can say, and he's well within his rights to say, and it draws its essence from the collective bargaining agreement that to prove a discharge case, you need more than a preponderance of the evidence. Now he can also, as would a judge maybe at a bench trial, also consider whether or not a lower standard was met, and that is exactly what he did do. By a preponderance, I'm convinced by a preponderance that this happened, but not by clear and convincing evidence, let alone the higher proof that you would need a criminal court. Well, if I understand what you're referring to, though, the just cause is the only standard supposedly before him, isn't it? Yes. As Justice Cook points out, if he says, I'm going to give you a suspension, or a suspension is appropriate in this case, there is no lesser standard upon which that could be hung, isn't there? Wouldn't he have to conclude that the just cause standard has been met, but my disagreement with the city is over the penalty? He could have, but... Wade just caused a discharge, and also Wade separately just caused a suspend. Under the Fire and Police Commission statute, there is a cause to discharge under state law, and also a lesser cause whether or not some lesser penalty should be imposed. It's not necessarily inconsistent that the same body, the same hearing officers, can consider, well, has a discharge case been met, and if not, as a lower standard, have they also met some lower standard of proof, in this case the preponderance. That happens in the Fire and Police Commission Act, it happens in arbitration as well, and actually the Supreme Court has encouraged that sort of thing in its 1996 decision, the public policy case. Has it encouraged what sort of thing? The Supreme Court and this court in the County of DeWitt, the Supreme Court's decision was 1996, this court's case was County of DeWitt. In both of those cases, the courts found that the public policy exception was met, and for the very specific reason that the arbitrator did not conclude that some sort of other disciplinary sanction was appropriate, the courts vacated those decisions. Because the courts were left with it's an all or nothing situation. The courts in both cases said the arbitrator should have concluded whether or not there was some other, I think this court used the term reprimand in DeWitt, and the Supreme Court said suspension. They should have concluded whether or not the employee should have been suspended or punished at all. The problem in both of those cases was that the employee, the arbitrator recommended no punishment whatsoever. Are you referring in 1996 to the DCFS case? Yes. The public policy case? Yes. My recollection was that the Supreme Court determined that the DCFS worker was properly fired. Here's what the Supreme Court said. That was the ultimate conclusion. But what the Supreme Court said was, are they referring back to the 1988 case? Also I think it was DCFS. And they said, as we explained, the arbitrator there, back in 1988, reinstated the workers by reducing their dismissals to suspensions. We upheld that arbitral decision because the arbitrator expressly found that the employees were exemplary, punishment had been imposed, and no nexus existed between the infraction. That was the Frawley-Cabutra case where in 1988 those two workers left and patients died but there wasn't really a connection between the two. Then back to 1996, the Supreme Court is talking about the case at that time. Ordinarily a court would be hard-pressed to find a public policy barring reinstatement in the case in which an arbitrator has expressly or by implication determined that the employee is subject to rehabilitation, therefore not likely to commit an act which violates public policy in the future. Of course, such an express or implied determination is totally lacking in this case because the arbitrator didn't impose any punishment whatsoever. He totally reinstated the DCFS worker of that reporting issue in 1996. Well, the 1996 case arose because of a limitations period imposed contractually where no punishment could be imposed upon the social worker. Wasn't that the context? That is what the union argued, yes. And this court bought it and it was the Supreme Court that rejected it. I don't understand how the Supreme Court's rejection of that case helps you. I didn't either until I read the case. I just read the case recently. But very clearly what the trial court below did in this case is the turning point for the trial court's decision was they said, where did the arbitrator find that Officer Welker could be rehabilitated? Show me an express finding from the arbitrator in his 100 pages that Officer Welker won't recommit if he's guilty under the preponderance. And that is exactly the wrong test. The Supreme Court said it can't be implied. And then this court two years after that Ask Me case said that what happened in other cases is that the employees did not deny their wrongdoing and were still punished in some way, which is what we have here. In County of DeWitt that wasn't the case. The arbitrator awarded complete reinstatement to Winstead without the slightest reprimand for her behavior. Thus he did not take any precautionary steps to deter future misconduct or to ensure it will not be repeated. But of course this argument assumes that there was a predominant public policy which was violated, which is not the case here. Why isn't that the case? We have two instances of arguably repeat domestic violence and then the aggravating circumstance of a police officer who was less than truthful about the second one. You're talking to a court that deals a lot with criminal cases and police involvement. This strikes me as a troubling pattern on behalf of this particular officer. It seems to me the city of Decatur would be well within its rights to be concerned about having this guy wear the uniform. I understand that he, sitting here today, he's innocent of domestic battery. He has never been found guilty of domestic battery. You know, that goes back to the whole business. You mean until you're tried and convicted, you're not subject to administrative sanctions if you're a police officer? Is that it? No. But the city said he was guilty of domestic battery. The city said he committed that crime. And his response is now his wife hit him in the face with her nose? No, there was incidental contact between the two. And what did the arbitrator say? Did he agree that the wife hit him in the face with her nose? No, the arbitrator said very specifically that there's not enough evidence for him to find that Officer Welker intended to hit his wife. And that he said time and again the city has not proven guilt. They have not proven that he committed the crime of domestic battery. The city did not present a single accusing witness. Who testified at this arbitration? The Internal Affairs Lieutenant, Chief of Police, I believe, testified, and Officer Welker, for those that I recall. What about others? That was it? No one else testified? I take that back. The sergeant who interviewed Officer Welker denied that the incident testified. And maybe the sergeant lieutenant who interviewed his ex-wife testified. What about the first domestic violence incident? Well, the city did not. What was the time period between those? It wasn't a great period of time. It was three months. But, of course, the city, that was not challenged by anybody, and the city did not terminate it. But they suspended him for 30 days. Correct, they did. They did. But it wasn't contrary to public policy then for an uncontested incident to reinstate the employee. But the argument would be, indeed, I think you're making now, gee, this situation is remediable. Well, if you're a repeat offender, maybe the remediable doesn't look so likely. And then doing it again within three months, a factor which the city can take into consideration. And is there a dispute that your client was less than honest with regard to what had happened with regard to the second incident? It's not a dispute, but there's a degree element to that. He was asked at his home by the sergeant, hey, did you have any contact with your wife, any physical contact? He said no. Within an hour later, he corrected himself to the same sergeant. So that is the total degree of the untruthfulness at issue here. At his home, he said, no, we didn't have any physical contact. So how should that be viewed? Excuse me? How should that be viewed? Well, it's a matter of degree. It happens. He never denied the untruthfulness. How many years had he been a police officer at this point? At least 13, I think, and closer to 15. To what extent would this history of your client be available and, in fact, required to be discoverable in a criminal case when he's a witness against some defendant as a police officer in the city of Decatur? It's always discoverable. When I used to do criminal law, of course, there would be a motion to limit it in advance of the trial so that those sort of issues would be hatched out before you get to the actual trial. Probably under a Freedom of Information Act request, that information could be obtained. How about Brady v. Maryland? Would the state's attorney be required in a situation where credibility of your client was going to be an issue to affirmatively disclose, by the way, I've got a cop who's had these problems in the past? The domestic violence situations, I don't know how that bears on his credibility. The initial untruthfulness, if I were a prosecutor and I wanted to make sure my prosecution was good, I would go ahead and disclose it and let the trial court judge deal with that situation. I don't know that it's required. But it would err on the side of disclosing it. Is it your view, or is it the correct interpretation of just cause, that in order to terminate, you must have just cause? And just cause should be proved by clear and convincing evidence? Exactly. But is that only if a crime is asserted, or is it just cause always has to be clear and convincing, otherwise you do something less and impose less serious punishment? No, generally it's a preponderance. But only because it's a crime. Or because it, not only, but because the city chooses to charge it. Then what about conduct that's not a crime, but is offensive to the public and undermines trust or faith in law enforcement, and the individual does it once and gets a 30-day suspension for it, and then the individual does it a second time, at least by preponderance, does it a second time, and is untruthful about it, and we use untruthful as a way to soften it, lies about it in a way that we regularly chastise defendants. How would you be characterized when you change your testimony at trial? What you said at the time, what you say now, how you changed your story, how you back-filled and know this isn't really what happened. Why doesn't that add up to a preponderance? I mean, we went through a period of time where there wasn't any domestic battery. There wasn't such a crime. Does that mean that if we didn't have that on the books, that you couldn't terminate a public employee who got involved in several of these instances very closely together in time and also lied about it? No, I think it's a matter of severity, especially the untruthfulness. I understand where you're coming from. I don't think saying there was no contact and then within an hour correcting yourself, I don't think that rises to that. Okay, that's not that easy. Okay, shading the facts, reconsidering what really happened, thinking it through. Oh, I made a mistake. However you characterize it, it's not forthcoming. Good times up, counsel. You have a chance to address this again in rebuttal. Thank you. Thank you. Mr. Robinson? Thank you, your honors. May it please the court. Counsel? The award reinstating Jeremy Welker after having twice committed domestic battery upon his then wife and on the second occurrence having been, as the court described, less than truthful, I would describe it as lying about it, clearly violates public policy. The courts have crafted a public policy exception by which arbitration awards may be vacated even though they otherwise draw their essence from the collective bargaining agreement. The basis of the award is the court's abhorrence to enforce an illegal contract, in this case a contract that violates public policy. What if the officer from the very beginning had argued, if you want to terminate me for this, if you're going to base this on what you say was a crime or has the label of a similar criminal offense in Illinois, domestic battery, if you want to terminate, then you're going to have to prove the crime by clear and convincing evidence. Not beyond a reasonable doubt, but by clear and convincing rather than a preponderance. I don't think the officer would have any more say in requiring the arbitrator to use that burden or standard of proof than his employer. Yeah, but it sounds like in a strange way, given the way the arbitrator made his comments, that maybe he was using that standard. Because he says, and you're both correct, he says any number of times two different things, or one of them is slightly different. He says, yeah, the city's presented all the credible evidence to show by preponderance this occurred. It seems that directly responding to your initial question that that issue was resolved by Loudermill, which established the level of due process required in public contract employment situations. I'm not sure that an arbitrator's decision to require clear and convincing as opposed to a preponderance of the evidence is in any way required, certainly by court precedent. And also, I don't believe that prior arbitration decisions wherein arbitrators determined that the appropriate standard for an employer seeking to prove criminal conduct as a basis for discharge is binding on subsequent arbitrators. And it is certainly not binding on the court. Well, following up on Justice Connacht's question, I'm still not totally clear on this, and I think it's important that we be clear. You heard the questions I asked of Mr. Boyles. What's the burden of proof that applies here? I'm not sure we have any definitive term, and can a violation by preponderance of criminal law by Mr. Welker, is it established on this record, and is that the burden of proof on the city so as to demonstrate that this criminal activity occurred for purposes of imposing sanctions regarding his employment? Or, as you heard Mr. Boyle say, no, no, it's got to be proof by preponderance of the evidence. And in fact, in this case, maybe the different burden of proof differences might make a difference. What's your position? Well, again, there is no precedent requiring an arbitrator to select clear and convincing as his burden of proof in making his just cause decision. Had the arbitrator in this case chosen preponderance and found for the employer, and the union was then before this court saying, gee, the arbitrator should have used a clear and convincing, I doubt that this court would seek to upset the arbitration award, because obviously there wouldn't be public policy concerns. So really what we have here is almost the opposite. You could read the arbitrator's decision saying, a reasonable person viewing this from a preponderance situation would say that it happened. And it happened to the point where I've got to do something, I've got to require discipline. But because I think that what's fair is to require it to be proven by clear and convincing in order to terminate, I'm going to use that standard. And I'm going to choose to suspend and direct it to be remediated or there are attempts made to remediate it. And Justice Kinect, I think that is a fair summation of what appears to be, to the extent that anybody can decipher it, the arbitrator's reasoning. Well, then what's wrong with that? What's wrong with that is that the trump card is that the court cannot be required to enforce an illegal contract. The court cannot be required or will not, will refuse to enforce a contract that violates public policy. So while the arbitrator may well say the standard of proof is clear and convincing and I don't think that the city met its standard of proof, the ultimate inquiry lies with the court. And obviously that is based in the court's abhorrence to be party to enforcing an illegal or, in this case, a violative of public policy contract. Does the public policy exception override the deference we give to the arbitrator's decision? It does. It does. So the fact that the parties are free to choose arbitration, arbitration is given great respect, courts will interfere with an arbitrator's decision only in unusual circumstances, all that's just recital? Because whenever the court wants to overturn an arbitrator's decision, he just uses the words public policy? I wish it were so in some instances, but I don't believe that the public policy exception is anywhere near that broad. In the County of DeWitt case, not the County of DeWitt, there was a case involving a police officer who was actually convicted of criminal trespass to a motor vehicle. And in upholding the arbitration award reinstating that officer, the courts found no public policy violation by that reinstatement. So it's not a situation where every crime is going to involve a violation of public policy. It's only the extraordinary situations such as we have here involving not only untruthfulness and the public policy favoring effective law enforcement. We can't overturn an arbitrator's decision just because we disagree with it. Absolutely, absolutely not. That is correct. That is the basis for the deferential standard that the court gives arbitration awards. Let me see if I understand you earlier. I've been thinking about your answer to Justice Connick. I want to make sure I understand it and following up on that too. The arbitrator was the trier of fact here. Had the arbitrator, for instance, concluded that no domestic violence incident occurred at all, you'd be stuck with that, wouldn't you? Justice Stegman, I'm not convinced that I would. I don't find any precedent for the proposition that the trial court or even this court may look beyond the arbitrator's findings of fact into the record that was before the arbitrator. However, in reading, I suppose, dicta in the very many decisions that I've looked at, what I do find is that courts, in protecting their unwillingness to enforce contracts that violate public policy, have mentioned what appears to be that they have looked beyond. Well, let me rephrase. I think your answer is sound. Maybe the way to put it would be, as opposed to being stuck with it, at a minimum you'd have to argue that it would be contrary to the manifest way to be evidence, or very much like a jury verdict, where you'd have to be arguing to us no reasonable trier of fact could have come up with this decision, et cetera, based on the cold record. It would be very tough for you to try to win that on appeal. But let me go back and see if I understand what your answer to Justice Connick was. Here it appears, if I understand you correctly, that the arbitrator found, by preponderance of the evidence, the domestic violence incident to have occurred, but concluded that the just cause standard of clear and convincing, the higher burden, wasn't met, and therefore, under the just cause standard, it wasn't the basis to fire Mr. Welker. Instead, he should just be suspended, based upon the finding of the lesser standard. But, if I understand you correctly, your position is that for the courts, applying the public policy exception to an arbitrator's decision, that once a finding has been made that those acts, in fact, occurred, by 51%, more probably true than not through the preponderance of evidence standard, that's good enough. That can be a basis for the application of the public policy exception. Is that essentially your argument? The city's position is that it proved the charges upon which the dismissal was based by clear and convincing. The arbitrator found that the city carried its burden only to a preponderance. But, just pausing right there, that's good enough, in your position, for the public policy exception to apply. Provided the court finds a dominant public policy, and that the interpretation of the contract violates that public policy. So, we're clear, we only get to the public policy exception, if the prior fact, in this case, the arbitrator first decides that it occurred, and it occurred by preponderance of the evidence. I'm not sure that the courts have given that much deference to the arbitrators. Well, we're not deciding it, and Judge Bollinger shouldn't be deciding it, should he? He didn't hear or see any of these people. Well, the body of case law starts with Holcren versus White Star Mining, and in that case, at the very beginning of the 20th century, the Supreme Court decided that the courts would not review beyond the factual findings of the arbitrator. That was before the court crafted the public policy exception. The public policy exception, I believe, first finds its basis in Illinois law, in a Cook County case in which the court found that the arbitrator's interpretation of a contract, which effectively awarded additional benefits under the contract to illegally striking teachers, violated public policy. Is there a standard? I wish I could say. I'm not convinced that the courts have enunciated a standard by which they'll make this review. Let me ask a question. I believe that you're asserting that there is no case that says if the conduct alleged by the city also happens to be a crime, that the city need prove that the conduct occurred by clear and convincing evidence. That is exactly what I'm saying. But I think you were also suggesting that perhaps there are some arbitrators that do it that way, and maybe the case doesn't make its way up or that issue isn't refined in the appellate process and it's not necessary to stop. Do you think that's also the case? I think that's probably the case, yes. Because you made a reference that just because one arbitrator does it, that's not precedent for another arbitrator. And because this arbitrator did it, in another kind of case, it might be okay or you would resist it less if it were conduct that was less reprehensible to this overarching public policy. But in this instance, because it's domestic violence and it's repeated, and it relates to police officers, there's no conviction here, but if there's a conviction, that is a very serious problem for a law enforcement official. That's what makes it a violation of public policy. I think I understand your question and I think I agree. My statement would be, if this were a case before this court involving simply an alleged violation of the contract that did not invoke any public policy considerations, and one side or the other was dissatisfied that the arbitrator chose to require clear and convincing proof, I don't think this court would be able to afford any relief. But you're also saying that in this case, is it because, and I looked at your brief, the recitation of the criminal statutes that could apply, which do announce public policy, even though there was no crime here or proven crime, that because it's domestic violence, it's different. I mean, you're treating it, wait, wait, this really is violating public policy. That is absolutely correct. The legislative response and judicial response to the domestic violence problem is in my mind virtually unparalleled in the criminal law. There's just a host of legislative enactments and pronouncements on the problem,  but there's virtually no crime that I can think of or no actions that would be criminal that I can think of that have drawn the same attention as domestic violence from the General Assembly. Does every bit of misconduct by a police officer raise public policy concern? Absolutely not. And in fact, as I mentioned, and I don't recall the case name, the case involving a police officer or sheriff's deputy who was actually convicted of trespass or damage to a vehicle and that the arbitration award reinstating him was upheld by the courts. And I think that the missing element in that case was the public policy. If I might conclude, the award in this case, I'm sorry, the arbitrator's interpretation of the collective bargaining agreement between the Police Benevolent and Protective Association and the City of Decatur violates public policy that is dominant, explicit, and well-defined. And I urge that the courts will find. Any other questions? Thank you, counsel. Mr. Poyles, any rebuttals, sir? Thank you. I think towards the end of my first presentation, I was asked if the arbitrator could make some findings based on a preponderance and what the court's role would be if the arbitrator had found certain things based upon a preponderance. The arbitrator, his role is to determine if a discharge case is before him. It's his job to judge whether or not the facts and circumstances of the case, the strength of the proof, et cetera, is enough to warrant termination. He gets to judge the impact of public perception, if there is any, and can receive evidence about that. But isn't the arbitrator's duty divisible like it would be for a judge in a bench trial? That is, the first thing you do is make a determination of what the facts are, as a prior fact, and then you decide based upon your findings what disposition is appropriate, assuming you find in favor of the petitioner at all? It is divisible, yes. So here it appears that the arbitrator found domestic violence to have occurred by preponderance of the evidence, but not by the standard of clear and convincing evidence. Yes. And the arbitrator then concluded that just cause does not permit a termination of your client unless the clearly and convincing standard was met, which he concluded it wasn't, and therefore the lesser standard would be sufficient to impose a 45-day suspension. Correct. You think that would be a fair resolution of putting all this together? Correct. For purposes, however, of that, because we're not reviewing whether the arbitration was problematic for the arbitrator's chosen punishment. The question before us, which the city has raised, is assuming someone has committed a domestic violence under the circumstances here, to keep that person out as a police officer, would that be in violation of public policy? So my question is, in applying the public policy doctrine, shouldn't the prior fact, the security arbitrator's determination, that domestic violence occurred by preponderance be sufficient? No. Because that very finding is the reason the public policy exception doesn't carry the day. That very finding. Let me back up. The arbitrator can't say, well, the discharge case was approved, but suspension is warranted. There has to be some factual predicate. Because his duties are divisible, there has to be some predicate finding that something happened to warrant some disciplinary sanction. And the Supreme Court and this Court both require that where discharge is not awarded, that there at least should be the option. It's not an all or nothing situation. There should be a middle ground. That is what precedent instructs. But that middle ground is for the arbitrator when he decides what sanction is appropriate in his capacity and powers as an arbitrator. As Justice Cook correctly pointed out, we're not second-guessing the arbitrator's either findings or are we supposed to second-guess those things he's done within his powers. The public policy exception is above and beyond any of that, though, when it's supposed to apply in limited circumstances. And here the question is, the first question is, did it happen? And then the second question, if it did happen, is it in violation of public policy to keep this guy on? My question to you is, for purposes of our first inquiry, did it happen? Why isn't the arbitrator's finding by a preponderance of the evidence sufficient? With all due respect, I think you misstated the law. Okay. Even under the public policy exception, all courts are duty-bound to uphold the arbitration award if at all possible. Courts are not permitted, even under the public policy exception, to search the arbitrator's award with an eye towards impeaching it. Well, go back to the DCFS case in 1996. The question there was, did it happen? And once the Supreme Court concluded that it happened, that the DCFS worker reported that the children were doing fine after they were dead from this fire, the court decided that public policy required that she be terminated, notwithstanding any of the collective bargaining agreement. They rejected it entirely. Is having anything to do with anything? Yes and no. They said the employee should have been punished. And what they specifically said is, an employee's amenability to discipline is a factual determination which cannot be questioned or rejected by a reviewing court. The court cannot seize upon the arbitrator's determination that this employee is subject to or can be rehabilitated and I'm going to punish him. That is exactly why the public policy exception, according to the Supreme Court and this court in County of DeWitt, that is exactly why it would not carry the day in this particular case. It's that vacuum where you have an unusual set of circumstances. For example, death of children. I don't know that that's precedented anywhere in DCFS history. Here we don't have that. We have something that happened before. The city chose not to terminate the officer. So this was not something unusual at all. And the arbitrator, by suspending him, impliedly found that he was subject to rehabilitation. And that fact cannot be the basis to which apply the public policy exception. Thank you, counsel. Your time is up. We'll take this matter under advisement and be in recess for a few moments.